AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Mississippi

SOUTHERN DISTRICT OF MISSISSIPPI
FILED
SEP 21 2015
ARTHUR JOHNSTON
BY _____ DEPUTY

United States of America )
v. )
Jose Santana and Armando Garza )   Case No. 3:15mj171-LRA
)
)
)
)
)

*Defendant(s)*

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of  September 20, 2015  in the county of  Hinds  in the Southern District of  Mississippi , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 21, United States Code, Sections 846 and 841(a)(1) | (Count 1) Conpiracy to Possess with the Intent to Distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine and (Count 2) Possession with the Intent to Distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine. |

This criminal complaint is based on these facts:

See affidavit of Timothy Terry attached hereto and incorporated herein by reference

☑ Continued on the attached sheet.

_____
Timothy Terry
*Complainant's signature*

Timothy Terry/TFO DEA
*Printed name and title*

Sworn to before me and signed in my presence.

Date: September 21, 2015

_____
*Judge's signature*

City and state:  Jackson, MS  Linda R. Anderson/ U.S. Magistrate Judge
*Printed name and title*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

IN THE MATTER OF THE APPLICATION §
FOR A COMPLAINT § Magistrate Case No. 3:15mj171-LRA
§ **Under Seal**

## AFFIDAVIT IN SUPPORT OF COMPLAINT

I, Timothy Terry, am an Investigator with the City of Madison Police Department in Madison, Mississippi. I am charged with the duty of enforcing the Uniformed Controlled Substance Act in the State of Mississippi, in that I am empowered by the laws of the State of Mississippi to conduct investigations of, and to make arrest for, offenses violating the Mississippi Uniformed Controlled Substance Act. I have been an Investigator with the City of Madison Police Department for approximately 3 years and am a graduate of the Southern Regional Public Safety Institute Academy Basic Law Enforcement Course. I have attended training at the Regional Counterdrug Training Academy in Meridian, Mississippi, and have received additional training provided by the Department of Justice, Drug Enforcement Administration. Currently I am assigned to the High Intensity Drug Trafficking Area Task Force with the Drug Enforcement Administration, as a federal Task Force Officer, where I have been assigned for approximately 2 years. As a result of my training, experience, and discussions with other narcotics agents and my daily involvement in drug trafficking investigation, I am familiar with the methods used by drug traffickers to acquire, transport, store, conceal, process, package, distribute and converse about controlled substances.

I have conducted and participated in multiple investigations involving drug trafficking , and have debriefed and interviewed multiple informants and cooperating defendants concerning methods used by drug traffickers to obtain, process, conceal and distribute controlled substances.

I know that drug traffickers commonly use, but are not limited to using, their telephones, residences, abandoned houses, apartments, street corners, businesses, vehicles, rental cars, hotel rooms among other things, to conduct their drug trafficking activities. It is also known that most drug traffickers try to hide assets by placing them in other people's names and attempt to conceal their drug proceeds through the using legitimate businesses.

The information set forth in this affidavit is based upon information relayed to me by other federal and state law enforcement officers, and upon my own observations during the course of this investigation. Because this affidavit is submitted for the limited purpose of establishing probable cause for a criminal complaint, it does not include all of the details of the investigation of which I am aware.

On September, 14, 2015, at approximately 4:27 pm, Jose SANTANA contacted a police officer acting, who at that time was acting in an undercover capacity (UC), through the UC's cellular telephone, from cellular telephone number 899-318-815. SANTANA advised the UC that he (SANTANA) was in Mexico with his boss and that SANTANA's boss advised that the UC could purchase 2 kilograms of methamphetamine for "ten dollars" ("ten dollars" is a slang term used to describe $10,000.00 USC) a piece if the UC traveled to Dallas, TX. This UC had previously purchased approximately 2 kilograms of methamphetamine from SANTANA in Dallas, Texas. The UC asked SANTANA if it would cost the same if he, the UC, got (3) kilograms of methamphetamine. SANTANA told the UC that it would still be $10,000.00 for each kilogram[1].

---

[1] When your affiant refers to a telephone call placed by the UC or SANTANA throughout the affidavit the telephone call being described has been consensually recorded by law enforcement officers.

On September 16, 2015, at approximately 4:31 pm, SANTANA contacted the UC cellular telephone from cellular telephone number 956-352-3039 an inquired if the UC planned to meet this Wednesday or next Wednesday. This query by SANTANA was an effort to coordinate the previous discussed 3 kilogram drug transaction. The UC asked SANTANA if SANTANA could bring the methamphetamine to him (UC) between now and then. The UC advised SANTANA that he (UC) would pay SANTANA for the trip. SANTANA stated that after the last time in Mississippi, referring to his cousin (Luis HERNANDEZ) being arrested by Madison County Sheriff's Office. SANTANA did not want to travel to Mississippi. SANTANA asked the UC if the UC was going to be in the Jackson area for a while and advised the UC that he (SANTANA) was going to talk to his boss and would let the UC know if his boss would be ok with SANTANA traveling to Jackson. On this same date, at approximately 9:56 pm, SANTANA and the UC had another telephone conversation in which SANTANA stated that he had talked to his boss and asked the UC what the UC would be willing to pay to have the 3 kilograms of Methamphetamine/ICE transported to Jackson, MS. The UC told SANTANA that he (UC) would pay $37,000.00 in United States Currency for the 3 kilograms of methamphetamine. The UC asked SANTANA if the $37,000.00 was fair because the UC wanted to make sure some of the money would be going to SANTANA's pocket. SANTANA advised the UC that some of the money would be going to his (SANTANA's) pocket. SANTANA then advised the UC that he (SANTANA) would be following a guy that works for him (SANTANA). SANTANA asked the UC if the road from Dallas towards Jackson was simple and if the UC had the money ready. SANTANA advised the UC that he (SANTANA) had to get the driver ready and that he (SANTANA) had to pick up the meth from Dallas, Texas.

SANTANA advised the UC that the money would be better in 100's and that he (SANTANA) will be in Jackson the day after tomorrow.

On September 18, 2015, at approximately 2:42 pm, the UC placed a telephone call to SANTANA on cellular telephone number 956-352-3039. The UC advised SANTANA that he (UC) was checking on him (SANTANA) and SANTANA stated that he was still waiting on his boss and that he had not left Mission, TX. SANTANA advised the UC that he (SANTANA) would contact the UC in about an hour or two to let the UC know if he (SANTANA) would be taking off today or tomorrow. On this same date, at approximately 6:25 pm, the UC sent a text message to SANTANA stating "Any word?" in which SANTANA replied, "None yet but I'll let you know ASAP." On this same date, at approximately 8:57 pm, SANTANA contacted the UC's cellular telephone and advised the UC that he (SANTANA) would be taking off tomorrow morning.

On September 19, 2015, at approximately 12:30 pm, the UC placed a telephone call to SANTANA on cellular telephone number 956-352-3039. The UC told SANTANA that he (UC) was just checking on him (SANTANA) to make sure everything was going ok. SANTANA advised the UC that they were just taking off and that he (SANTANA) should be there sometime in the morning.

On September 20, 2015, at approximately 9:56 am, SANTANA contacted the UC's cellular telephone call from cellular telephone number 956-352-3039 and advised the UC that he (SANTANA) was on the road. SANTANA advised the UC that he should be in Jackson, Mississippi at 2 o'clock p.m. On this same date, at approximately 1:53 pm, SANTANA contacted the UC's cellular telephone from cellular telephone number 956-352-3039 an advised

the UC that he (SANTANA) was in Vicksburg and asked the UC where does he (SANTANA) need to go. The UC told SANTANA where to meet him.

On September 20, 2015, at approximately 2:50 pm agents observed the UC and SANTANA drive into the parking lot of Wal-Mart located at 127 Grandview Blvd, Madison, MS 39110. The UC and SANTANA parked on the south side of the Wal-Mart parking lot in which agents observed SANTANA exit his vehicle and approach the UC vehicle. SANTANA advised the UC that the methamphetamine was approximately 3 hours South on the bus. The UC stated that SANTANA and him (UC) could go somewhere and count the money and SANTANA asked the UC if it would be safe for him (SANTANA) to leave his vehicle at the parking lot. Agents observed SANTANA enter his vehicle and park the vehicle a row down from the UC vehicle. At this time, agents decided to apprehend SANTANA due to the fact SANTANA did not have the methamphetamine in possession. SANTANA was arrested and transported to the Madison Police Department, and SANTANA advised agents that the methamphetamine was on a bus headed to Jackson, MS. SANTANA advised agents that an albino male by the name of Mando GARZA was on the bus with the methamphetamine and that the bus was supposed to arrive in Jackson, MS around 6:00 pm. At approximately 4:44 pm, SANTANA placed a cellular telephone call to GARZA's cellular telephone number 956-438-7007 and advised GARZA that his (SANTANA's) phone was dead[2]. GARZA advised SANTANA that the bus would be arriving at 5:50 pm and SANTANA then advised GARZA that he (SANTANA) would be arriving in a blue Dodge. Law Enforcement Officers then traveled to the Grey Hound bus station located in Jackson, MS to set up surveillance for an interdiction stop on GARZA; however, after SANTANA pointed out GARZA to law enforcement officers the UC and SANTANA pulled

---

[2] The cellular telephone to GARZA placed by SANTANA was conducted with the UC's cellular telephone and therefore was consensually recorded by law enforcement officers.

around to the front of the bus station and GARZA subsequently placed a suitcase in the back of the UC's vehicle. Agents approached and identified themselves as law enforcement to GARZA and asked GARZA where he (GARZA) was heading. GARZA advised agents that he had just arrived to Jackson from Texas. Agents asked GARZA about his luggage and its contents. GARZA told the agents that the luggage was his. TFO Juan Chapa then retrieved his K-9 to do a drug sniff on the suitcase. TFO Chapa's K-9 alerted on the suitcase and agents relocated GARZA with the previous stated suitcase from the Grey Hound bus station to the Jackson District office. Agents were able to obtain a state search warrant for GARZA's suitcase which resulted in the seizure of (4) four vacuum sealed packages containing a shard like substance believed to be methamphetamine (ICE). A presumptive field test was conducted on each package which resulted in a positive indication for the presence of methamphetamine.

Agents were able to identify GARZA as Armando GARZA.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief, and that this declaration was executed on September 21, 2015.

_____
Timothy Terry
Task Force Agent
Drug Enforcement Administration

Sworn to and subscribed before me this the 21st day of September 2015.

_____
United States Magistrate Judge
Southern District of Mississippi